J-S69005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STEPHEN PAUL RIVEST, | |
| Appellant | No. 503 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 15, 2017
In the Court of Common Pleas of Mifflin County
Criminal Division at No(s): CP-44-CR-0000357-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: JANUARY 28, 2019**

Appellant, Stephen Paul Rivest, appeals from the judgment of sentence of an aggregate term of 12½-28 years' incarceration, imposed following his conviction for aggravated assault (AA), driving under the influence of alcohol or controlled substance (DUI), fleeing or attempting to elude a police officer (FAEPO), and multiple counts of recklessly endangering another person (REAP).  Appellant challenges the grading of his DUI offense, and the sufficiency of the evidence supporting his AA and REAP convictions.  After careful review, we vacate Appellant's judgment of sentence and remand for resentencing due to the erroneous grading of his DUI offense, but we affirm in all other respects.

On June 7, 2016, Appellant, driving a maroon pickup truck, fled from police officers who were trying to serve a warrant for his arrest.  During the

subsequent high-speed pursuit, various witnesses observed Appellant violating numerous traffic signals, speeding (at speeds approaching 100 m.p.h.), and, at times, travelling against the flow of traffic. *See* N.T., 7/11/17, at 74-90.

Corporal Robert Whisler of the Mifflin County Regional Police Department was monitoring the police radio for information regarding the pursuit. He parked his marked patrol vehicle on the side of U.S. 322 outside of the fog line and turned his emergency lights on. Soon thereafter, he observed Appellant's truck, travelling on the wrong side of the highway, headed toward his position. As it approached at high speed, Appellant's truck began to veer toward Corporal Whisler's vehicle, prompting the officer to take evasive action. The officer's quick reaction narrowly avoided an imminent, head-on collision. *Id.* at 122-30.

Corporal Jeff Remikas of the Pennsylvania State Police (PSP) was one of the officers who joined in the pursuit of Appellant's vehicle. He observed Appellant veering into oncoming traffic on several occasions, as well as the incident with Corporal Whisler. At one point, when Corporal Remikas tried to pull up alongside Appellant's truck when Appellant began to slow down on a straightaway, Appellant steered into the corporal's vehicle and struck it. *Id.* at 221-25.

Trooper Ryan Speece of the PSP heard about the pursuit over the radio, and, anticipating Appellant's trajectory, set up Stingers[1] in Appellant's path near the Meadowbrook Nursing Home on U.S. 22. When Appellant's truck approached, Trooper Speece had to jump out of the way to avoid being hit. Appellant was so close to hitting Trooper Speece that he severed the rope the trooper was holding that connected to the Stingers. *Id.* at 239-48.

Appellant eventually brought his vehicle to a stop on U.S. 22 near a Dairy Queen in Mount Union, PA. Ashley Shade was approaching a red light at that location when Appellant swerved around and then in front of her vehicle, missing her by mere inches. Ms. Shade had to veer into a bank to avoid being hit. Appellant then abruptly stopped his truck, got out, and approached Ms. Shade's vehicle. He pulled on her door handles in an attempt to get in, but he was unsuccessful, as the doors remained locked. The police arrived on the scene a few seconds later and took Appellant into custody. *Id.* at 45-52.

Once Appellant was apprehended, multiple officers observed that he emitted a strong odor of alcohol, had bloodshot eyes, and slurred speech. They also described him as alternating between a manic and calm state. Appellant admitted to consuming multiple alcoholic beverages and prescription pills before these events. When he calmed down, Appellant apologized profusely for endangering others during the chase. Appellant was

---

[1] Trooper Speece described the "Stingers" as "accordion-style device[s] that allow [police] to deflate [a vehicle's ]tires…." *Id.* at 242.

then taken to the hospital to test his blood for alcohol and/or other substances, but he refused. *Id.* at 90-97; 263-65; 181-83.

Although the Commonwealth initially charged Appellant with thirty-two offenses, several were withdrawn prior to trial. Appellant faced ten charges at his jury trial, held on July 11, 2017, including: three counts of AA, 18 Pa.C.S. § 2702(a)(2); one count of FAEPO, 75 Pa.C.S. § 3733; DUI (general impairment), 75 Pa.C.S. § 3802(a)(1); and five counts of REAP, 18 Pa.C.S. § 2705. The jury found Appellant not guilty of two counts of AA, but guilty of all the remaining offenses. At the concurrent bench trial for the remaining 17 summary offenses, the trial court found Appellant guilty on all counts.[2] On August 21, 2017, the trial court sentenced Appellant to consecutive terms of 6-12 years' incarceration for AA, 1-5 years' incarceration for DUI, 1-2 years' incarceration for REAP, 1-2 years' incarceration for REAP, 1-2 years' incarceration for REAP, 1-2 years' incarceration for REAP, and 1½-3 years' incarceration for FAEPO.

Appellant filed a timely post-sentence motion on August 25, 2017. The trial court denied that motion by order dated February 21, 2018, and Appellant filed his notice of appeal on March 22, 2018.[3] Appellant then filed a timely,

---

[2] The summary offenses are not at issue in this appeal.

[3] A trial court has 120 days to decide a post-sentence motion; if it fails to decide it in that period, the motion is deemed denied by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a). At that time, "the clerk of courts shall forthwith enter an order on behalf of the court [denying the post-sentence motion by

court-ordered Pa.R.A.P. 1925(b) statement on April 9, 2018, and the trial court issued its Rule 1925(a) opinion on May 14, 2018.

Appellant now presents the following questions for our review:

Question 1: Was the [DUI] offense incorrectly graded at the time of sentencing?

Question 2: Was the evidence insufficient to sustain the guilty verdict for [AA]?

Question 3: Was the evidence insufficient to sustain the guilty verdicts on the two counts of [REAP] which did not specifically identify the police officers and motorists and their locations in relationship to [Appellant]'s vehicle?

Appellant's Brief at 7.

First, Appellant argues that the trial court improperly graded his DUI conviction as a first-degree misdemeanor,[4] instead of a second-degree

_____

operation of law], and, … forthwith shall serve a copy of the order on the attorney for the Commonwealth, the defendant's attorney, or the defendant if unrepresented, that the post-sentence motion is deemed denied." Pa.R.Crim.P. 720(B)(3)(c). Here, the 120-day period to decide Appellant's post-sentence motion expired on December 26, 2017, but the clerk of courts failed to enter an order to that effect. Thus, technically, Appellant's notice of appeal, filed on March 22, 2018, is untimely. However, "[t]his Court has previously held that, where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances." **Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003). As Appellant filed his notice of appeal within 30 days of the trial court's order dated February 21, 2018—effectively the date when he was notified of the denial of his post-sentence motion—we decline to quash Appellant's appeal as untimely.

[4] Appellant mistakenly confuses 'first-degree' and 'third-degree' misdemeanors in his brief. However, it is clear from the context of the record

misdemeanor. The trial court concurs, Trial Court Opinion (TCO), 5/14/18, at 1-2, and the Commonwealth "agrees with the position of [Appellant]," Commonwealth's Brief at 2. Accordingly, we agree, and we will not discuss the merits of this claim further.

However, the trial court indicates that it corrected Appellant's sentence in response to his Rule 1925(b) statement. A trial court, in general, lacks jurisdiction to modify an order more than thirty days after it has been entered, or if an appeal has been filed. **See** 42 Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."). Here, any order correcting Appellant's judgment of sentence to reflect the proper grading of his DUI offense occurred more than 30 days after his judgment of sentence was imposed, and after Appellant filed his appeal and, as such, constitutes a legal nullity. Thus, we remand this matter for resentencing, but solely for the purpose of correcting Appellant's illegal sentence for DUI.[5]

_____

that he intended to argue that his DUI offense should have been graded lower than what the trial court initially imposed. Clearly, Appellant is not arguing that he should receive a harsher penalty than initially imposed.

[5] Given the trial court's actions, albeit premature, we do not believe that the correction of Appellant's illegal sentence for DUI affects the court's overall sentencing scheme in this case. Thus, we will vacate Appellant's judgment of sentence only with respect to that offense.

- 6 -

Next, Appellant argues that the evidence was insufficient to convict him of AA against Corporal Whisler. Specifically, Appellant argues that because the jury was not instructed "on how malice must be found for an [AA] conviction even if a specific intent to cause serious bodily injury to the victim exists, there could not have been a clear finding by the jury that there was proof beyond a reasonable doubt of each element of the [AA] charge." Appellant's Brief at 15.

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Here, Appellant was charged under the following provision of the AA statute:

> **(a) Offense defined.--**A person is guilty of aggravated assault if he:
>
> …
>
> (2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or

other entity engaged in public transportation, while in the performance of duty;

18 Pa.C.S. § 2702(a)(2).

Appellant's argument is directed at a perceived deficiency in the jury instructions, not the sufficiency of the evidence. Thus, this aspect of Appellant's sufficiency claim is waived. Appellant did not raise any jury-instruction claim in his Rule 1925(b) statement, and any "issues not raised in a 1925(b) statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998).[6]

To the extent Appellant is claiming that the evidence was not sufficient to demonstrate malice, we disagree. As the trial court stated,

> the evidence[,] viewed in the light most favorable to the Commonwealth[,] establishes that there was sufficient evidence produced to sustain the verdict of [a]ggravated [a]ssault. Corporal Whisler testified that on the night in question, he had parked his police vehicle entirely outside of the travel portion of U.S. Route 322 East, beyond the white fog line, with his overhead lights activated. Given the late hour, and the strength of the police vehicle's emergency lights, Corporal Whisler indicated that his vehicle should have been observable from a great distance away.
>
> Appellant, initially travelling on U.S. Route 322 East, eventually reversed course and began travelling West on U.S. Route 322 East, against opposing traffic. Corporal Whisler's testimony indicated that Appellant's vehicle eventually came into view and that he was observable from some distance away given the long, straight stretch of highway. Corporal Whisler observed that the Appellant's vehicle had initially been straddling the center line between the right and left lanes. However, as Appellant

---

[6] Moreover, Appellant has not directed this Court's attention to where in the record he objected to the jury instructions given by the trial court, nor has he set forth a separate jury-instruction claim in his brief.

approached Corporal Whisler's position he altered his course and began to drive straight at Corporal Whisler's vehicle, outside of the lanes of travel. As a result, Corporal Whisler was forced to accelerate rapidly in order to avoid a head-on collision.

TCO at 3.

"[F]or the purpose of third-degree murder or aggravated assault, our courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) (quotations marks and citations omitted). Instantly, the jury could have reasonably concluded that Appellant demonstrated a conscious disregard for the life of Corporal Whisler, who easily could have been killed or seriously injured had he not taken evasive action.

Appellant also asserts that his conviction for AA is inconsistent with the not-guilty verdicts on the other aggravated assault charges. Generally, inconsistent verdicts do not present a challenge to the sufficiency of the evidence. As our Supreme Court has said:

> Federal and Pennsylvania courts alike have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt. Rather, it has been the understanding of federal courts as well as the courts of this Commonwealth that an acquittal may merely show lenity on the jury's behalf, or that "the verdict may have been the result of compromise, or of a mistake on the part of the jury." *United States v. Dunn*, 284 U.S. 390, 394, … (1932); *see also* [*Commonwealth v.*] *Carter*, 282 A.2d [375,] 376 [(Pa. 1971)]. Accordingly, the United States Supreme Court has instructed that courts may not make factual findings regarding

jury acquittals and, thus, cannot "upset" verdicts by "speculation or inquiry into such matters." ***Dunn***, 284 U.S. at 394…

***Commonwealth v. Moore***, 103 A.3d 1240, 1246 (Pa. 2014).

Here, Appellant does not cite to any of the cases that express an exception to the general rule on inconsistent verdicts, such as where there is an acquittal on a predicate offense. ***See Commonwealth v. Reed,*** 9 A.3d 1138 (Pa. 2010) (finding evidence insufficient to support higher grading of unlawful contact with minor where the jury found the defendant not guilty of the predicate offense for that grading); ***Commonwealth v. Magliocco***, 883 A.2d 479 (Pa. 2005) (finding the evidence insufficient to convict for ethnic intimidation because where the defendant was acquitted of terroristic threats, where the latter was a predicate offense at the time of his conviction). Our review of those cases indicates that they are not analogous to the instant matter. Moreover, the AA charges in this case involved multiple victims in a variety of circumstances; thus, it is not even clear that the verdicts were at all inconsistent. Accordingly, we conclude that, insofar as Appellant's sufficiency claim was not waived, it lacks merit.

Next, Appellant claims that the evidence was insufficient to support the two counts of REAP that did not specifically identify a victim. He asserts that there was no testimony or evidence demonstrating that he presented a danger to anyone beyond the victims of the other REAP offenses. Addressing the officers who followed Appellant during the high-speed chase, Officers Shearer and Terry and Trooper Bishop, Appellant argues that:

> The actions of these officers in pursuing [Appellant] was voluntary, and any risk of harm or injury from the voluntary high-speed pursuit of [Appellant]'s vehicle was a risk assumed by said officers. There does not appear in the record any evidence that [Appellant] attempted to collide with, run off the road, or otherwise inflict harm on these three officers.

Appellant's Brief at 19.

> A person commits the crime of recklessly endangering another person "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. This statutory provision was directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have. This Court held, in **Commonwealth v. Trowbridge**, … 395 A.2d 1337 (Pa. Super. 1978), that recklessly endangering another person is a crime of assault which requires the "creation of danger." As such, the Court concluded, there must be an "actual present ability to inflict harm." **Id.** at … 1340.

**Commonwealth v. Rivera**, 503 A.2d 11, 12 (Pa. Super. 1985) (*en banc*).

We note that Appellant fails to cite any case law suggesting that a conviction for REAP cannot be based on risks to pursuing officers in a high-speed chase because their actions are 'voluntary.' To the contrary, the REAP statute does not contain any element addressing the voluntariness, or lack thereof, of an alleged victim to that offense. Moreover, Appellant should have known that his actions would almost certainly prompt police pursuit. This is not a case where a reasonable person would not anticipate police pursuit and the attendant risks of a high-speed chase. Accordingly, assuming Officers Shearer and Terry and Trooper Bishop were the victims of the REAP offenses at issue, we conclude the evidence was sufficient to convict Appellant of those

offenses. Appellant's flight undoubtedly put the pursuing officers' lives at risk due to his excessive speeds and reckless driving.

Alternatively, we conclude that there were at least two other potential victims of a REAP offense. As noted by the Commonwealth, **see** Commonwealth's Brief at 9, Trooper Bishop testified as follows:

> As [Appellant's truck] was driving down Narrows going eastbound, I observed large puffs of black smoke coming from the exhaust. It would come for a while as the vehicle spe[]d up, ounce it would hit the limit, the governor … on the vehicle, black smoke would stop. We would stay … roughly between 95 and a hundred [m.p.h.] the whole time.
>
> There w[ere] cars that were slowly moving off to the right of the road or left side of the road depending on how fast we came upon them. It appeared that [Appellant] gave no regard to anybody [who] was also on the roadway at all. He continued to drive between both lanes of travel, whichever way he need to get past.

N.T. at 154-55. Later during the chase, Trooper Bishop observed Appellant steer his vehicle toward several tractor-trailers at speeds approaching 100 m.p.h. **Id.** at 158-59.

Based on this testimony, we alternatively conclude that there was sufficient evidence of *at least* two REAP offenses committed by Appellant that did not involve the pursuing officers. It is clear that, by travelling at extremely high speeds, at times on the wrong side of the road, Appellant placed numerous other motorists in serious mortal danger through his reckless actions.

Judgment of sentence **vacated** in part, **affirmed** in part. Case **remanded** for resentencing on Appellant's DUI conviction. Jurisdiction **relinquished**.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/28/2019